IN THE UNITED STATES DISTRICT COURT FOR THE

WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| TERI EPPERSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIV-09-194-L |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security | ) | |
| Administration, | ) | |
| | ) | |
| Defendant. | ) | |

## REPORT AND RECOMMENDATION

Plaintiff seeks judicial review pursuant to 42 U.S.C. § 405(g) of the final decision of

Defendant Commissioner denying her concurrent applications for disability insurance and

supplemental security income benefits under Titles II and XVI of the Social Security Act,

42 U.S.C. §§ 416(i), 423, 1382.  Defendant has answered the Complaint and filed the

administrative record (hereinafter TR___), and the parties have briefed the issues.   The

matter has been referred to the undersigned Magistrate Judge for initial proceedings

consistent with 28 U.S.C. § 636(b)(1)(B).  For the following reasons, it is recommended that

the  Commissioner's  decision  be  reversed  and  remanded  for  further  administrative

proceedings.

1

I. <u>Background</u>

In Plaintiff's applications filed February 9, 2005, Plaintiff alleged she became disabled on October 1, 2004, due to bipolar disorder and a congenital back defect. (TR 47-49, 50, 317-319). Plaintiff's applications were denied on initial review and on reconsideration. (TR 26, 27, 320-324). At Plaintiff's request, a hearing *de novo* was conducted on May 16, 2007, before Administrative Law Judge Bennett. (TR 335-371). During this hearing, Plaintiff and a vocational expert ("VE") testified. Plaintiff testified that she was 53 years old and had previously worked as a salesperson, employment recruiter, general office worker, and advertising consultant. (TR 339-343). Plaintiff testified that her last job ended in October 2004 when the company that employed her as a salesperson ceased operation. She testified she was unable to maintain a job due to bipolar disorder, and she described two unsuccessful work attempts in 2006. (TR 343-344). Plaintiff stated that she has difficulty maintaining focus, completing tasks, and maintaining attention and concentration, and these difficulties cause her to have increased anxiety, rapid thoughts, and an inability to slow down in order to complete tasks. (TR 345). Plaintiff testified she also had severe low back pain from a congenital back impairment, increasing over the previous seven years, that also causes numbness and severe pain in her legs. (TR 347). She stated that an orthopedic surgeon recommended in 2001 that she undergo back surgery to fuse two bones that were causing nerve damage but that she elected not to have the surgery because of the risk of unsuccessful surgery. (TR 347). Plaintiff estimated she could stand for ten minutes and walk ½ block. Plaintiff stated that walking or standing for prolonged periods caused excruciating pain in

her back and legs. (TR 348-349).  Plaintiff also described mood swings related to her bipolar disorder, with manic periods generally lasting three days followed by periods of depression generally lasting two days or more, for which she took medications and was being treated by a psychiatrist, Dr. Al-Botros, beginning in 1998. (TR 345-346, 355, 360-361).

Following the hearing, the ALJ issued a decision in which the ALJ found that Plaintiff was not disabled within the meaning of the Social Security Act because she was capable of performing her previous work as an employment recruiter.  (TR 16-19).  The Appeals Council refused to review the administrative decision. (TR 5-8).  Plaintiff now seeks judicial review of the final decision of the Commissioner embodied in the ALJ's determination.

Plaintiff contends (1) the ALJ erred in presenting a hypothetical inquiry to the VE which did not include all of Plaintiff's limitations and that the ALJ erred in discounting the functional limitations found by the agency's medical consultants; (2) the ALJ erred by failing to determine whether any conflict existed between the VE's testimony and the <u>Dictionary of Occupational Titles</u>, as required by <u>Haddock v. Apfel</u>, 196 F.3d 1084, 1091 (10th Cir. 1999), and Social Security Ruling ("SSR") 00-4P; (3) the ALJ erred by failing to consider the evidence submitted by a lay individual; (4) there is not substantial evidence to support the ALJ's residual functional capacity ("RFC") finding; and (5) the ALJ erred by failing to comply with 20 C.F.R. § 404.1520a with respect to the evaluation of Plaintiff's mental impairment.

II. <u>Standard of Review</u>

Judicial review of this action is limited to determining whether the Commissioner's

decision is based upon substantial evidence and whether the correct legal standards were applied.  Emory v. Sullivan, 936 F.2d 1092, 1093 (10th Cir. 1991).  "Evidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion." Musgrave v. Sullivan, 966 F.2d 1371, 1374 (10th Cir. 1992).  Because "all the ALJ's required findings must be supported by substantial evidence," Haddock v. Apfel, 196 F.3d 1084, 1088 (10th Cir. 1999), the ALJ must "discuss[ ] the evidence supporting [the] decision" and must also "discuss the uncontroverted evidence [the ALJ] chooses not to rely upon, as well as significantly probative evidence [the ALJ] rejects." Clifton v. Chater, 79 F.3d 1007, 1010 (10th Cir. 1996).  The court may not reweigh the evidence or substitute its judgment for that of the Commissioner.  Hamilton v. Secretary of Health & Human Servs., 961 F.2d 1495, 1498 (10th Cir. 1992).  However, the court must "meticulously examine the record" in order to determine whether the evidence in support of the Commissioner's decision is substantial, "taking into account whatever in the record fairly detracts from its weight." Hamlin v. Barnhart, 365 F.3d 1208, 1214 (10th Cir. 2004)(internal quotation omitted).

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 416(i), 1382c(a)(3)(A).  The Commissioner applies a five-step inquiry to determine whether a claimant is disabled.  See 20 C.F.R. §§ 404.1520(b)-(f), 416.920(b)-(f) (2009); see also Grogan v. Barnhart, 399 F.3d

4

1257, 1261 (10th Cir. 2005)(describing five steps in detail).  Where a *prima facie* showing

is made that the plaintiff has one or more severe impairments and can no longer engage in

prior work activity, "the burden of proof shifts to the Commissioner at step five to show that

the claimant retains sufficient residual functional capacity (RFC) to perform work in the

national economy, given [the claimant's] age, education, and work experience." Grogan, 399

F.3d at 1261; accord, Channel v. Heckler, 747 F.2d 577, 579 (10th Cir. 1984).

III. Evaluation of Mental Impairments

   The arguments presented by Plaintiff in her brief are focused mainly on the ALJ's

evaluation of Plaintiff's mental impairment. The ALJ found that Plaintiff has severe mental

impairments due to bipolar disorder, anxiety, and depression. (TR 16).  Because of this

finding, the ALJ was required to

> follow the procedure for evaluating mental impairments set forth
> in 20 C.F.R. § 404.1520a [and § 416.920a] and the Listing of
> Impairments and document the procedure accordingly. This
> procedure first requires the [Commissioner] to determine the
> presence or absence of "certain medical findings which have
> been found especially relevant to the ability to work,"
> sometimes referred to as the "Part A" criteria. 20 C.F.R. §
> 404.1520a(b)(2) [and § 416.920a(b)(2)].  The [Commissioner]
> must then evaluate the degree of functional loss resulting from
> the impairment, using the "Part B" criteria. § 404.1520a(b)(3)
> [and § 416.920a(b)(3)].

Cruse v. United States Dep't of Health & Human Servs., 49 F.3d 614, 617 (10th Cir.

1995)(internal citation omitted).  The ALJ is required to "incorporate the pertinent findings

and conclusions" in his or her decision, 20 C.F.R. §§ 404.1520a(e)(2), 416.920a(e)(2), and

relate the medical evidence to those conclusions. Cruse, 49 F.3d at 618. The ALJ's decision does not contain an analysis of Plaintiff's severe mental impairments as required by 20 C.F.R. §§ 404.1420 and 416.920. Nowhere in his decision does the ALJ make explicit findings or conclusions with respect to the functional limitations resulting from Plaintiff's severe mental impairments. The ALJ in this case failed to follow the requisite procedure, and this error warrants a reversal of the Commissioner's decision and a remand for further administrative proceedings.

The ALJ also erred in rejecting the findings and conclusions of the agency's medical consultants. An agency medical consultant and psychologist, Dr. Goodrich, completed a psychiatric review technique ("PRT") form and a mental RFC assessment on June 22, 2005. (TR 196-213). In these documents, Dr. Goodrich reported her findings based on a review of the medical record. Dr. Goodrich found that Plaintiff's bipolar disorder had resulted in functional limitations, including moderate restrictions of activities of daily living, moderate difficulties in maintaining social functioning, moderate difficulties in maintaining concentration, persistence, or pace, and one or two episodes of decompensation. (TR 196-206). Dr. Goodrich's notes accompanying these findings reflect that Dr. Goodrich considered the Plaintiff's record of treatment for her bipolar disorder and the report of the consultative mental status examination conducted by Dr. France on May 12 2005. (TR 171-175, 208). Dr. Goodrich also found that Plaintiff's bipolar disorder had resulted in functional limitations which markedly limited her ability to understand and remember detailed instructions, markedly limited her ability to carry out detailed instructions, and moderately

6

limited her ability to interact appropriately with the general public. (TR 210-212).   Dr. Goodrich noted in connection with her RFC assessment that Plaintiff was capable of performing "simple routine tasks with regular supervision" and could "relate to coworkers and supervisors superficially" but she was "not able to interact with the general public for prolonged periods." (TR 212).   Dr. Goodrich's findings in these documents were affirmed by another agency medical consultant in February 2006. (TR 196, 212). Unfortunately, the signature of this physician is illegible, although it appears to be that of Dr. Kampschaefer, a psychologist. (TR 294).

As reasons for rejecting this assessment by mental health professionals of Plaintiff's functional limitations, the ALJ stated the following:

> The [ALJ] finds the assessment of Ms. [sic] Goodrich is not consistent with the findings of Gary A. Franc [sic], Ph.D., who examined the claimant.  This assessment is also not consistent with the records of North Rock Medication Clinic who [sic] repeatedly found that the claimant was not experiencing abnormal speech, mood, affect, or thought; and, that she was also not experiencing any delusions or hallucinations.  The assessment of Dr. Goodrich is not persuasive.

(TR 17).  The record reflects that Dr. France conducted an interview of Plaintiff and a brief mental status evaluation on May 12, 2005. (TR 171-175).  Plaintiff reported to Dr. France that she had been treated two weeks earlier at a Crisis Center for a suicide attempt and that she was living out of her car, received food stamps, and last worked in October 2004 when she lost her job as a salesperson because her employer ceased doing business. (TR 171-172). Dr. France noted his diagnostic assessment of possible bipolar Disorder NOS (not otherwise

specified) by history, borderline personality disorder by history, and a global assessment functioning ("GAF") score of 50. (TR 174).  Dr. France noted that Plaintiff's concentration and short term memory were fair, her abstract thinking was fair, and her judgment was good based on the mental status evaluation. (TR 174).  "The GAF is a subjective determination based on a scale of 100 to 1 of the clinician's judgment of the individual's overall level of functioning ....  A GAF score of 41-50 indicates serious symptoms or serious impairment in social, occupational, or school functioning, such as inability to keep a job." Langley v. Barnhart, 373 F.3d 1116, 1123 n. 3 (10th Cir. 2004)(quotations omitted).

An ALJ is required to consider the opinion of every medical source and provide specific, legitimate reasons for rejecting a medical opinion. Doyal v. Barnhart, 331 F.3d 758, 764 (10th Cir. 2003); 20 C.F.R. §§ 404.1527(d), 416.927(d); SSR 96-5p, 1996 WL 374183, at *1.  There are specific factors for an ALJ to weigh in considering a medical opinion, see 20 C.F.R. §§ 404.1527(d)(1)-(6), 416.927(d)(1)-(6), including whether the opinion is consistent with the evidence as a whole.

Dr. France's report of his consultative mental status evaluation of Plaintiff is not inconsistent with Dr. Goodrich's functional assessment.  The ALJ did not discuss the GAF score assigned to Plaintiff by Dr. France or its implications with respect to Plaintiff's functional limitations resulting from her mental impairment. Nor did the ALJ discuss the GAF score of 42 assigned to Plaintiff by a treating mental health professional in April 2005 following her suicide attempt. (TR 144).  See Petree v. Astrue, 260 Fed. Appx. 33, 42, 2007 WL 4554293, *8 (10th Cir. Dec. 28, 2007)(unpublished op.)(low GAF score is "piece of

evidence to be considered with the rest of the record").

The ALJ also relied on Plaintiff's treatment records at North Rock Medication Clinic as reasons for rejecting the agency medical consultant's functional assessments. The ALJ concluded that these treatment records showed Plaintiff had normal speech, mood, affect, and thought "on almost every occasion" over a three year period between 2003 and 2006. (TR 17). The ALJ points to eight progress notes completed by Plaintiff's treating psychiatrist, Dr. Al-Botros, during this time period in which the psychiatrist noted Plaintiff was doing fine on her medications. (TR 17). However, the ALJ's finding that Dr. Al-Botros consistently made such notations in his treatment records blatantly misrepresented these records, which consistently showed Plaintiff exhibited symptoms of bipolar disorder, including mood cycling, difficulty concentrating and focusing, hyperactivity, depressed mood, anxiety, euphoric mood, depressed mood, medication side effects, and irritability, despite prescribed medications and adjustments in her prescribed medications. See, e.g., TR 217 (mood depressed, irritable); 218 (mood euphoric, irritable); 219 (mood depressed); 223 (mood normal to mildly depressed); 224 (showed pressured speech, angry mood, expansive affect, hostile interaction, decreased sleep); 225 (reported medication side effects of sedation, muscle spasm; mood anxious, irritable); 226 (mood euphoric, irritable); 227 (mood anxious, mildly euphoric); 229 (reported medication side effect of sedation; mood anxious, irritable); 230 (mood irritable, mildly depressed, mildly pressured speech, reported decreased sleep); 231 (mood anxious, irritable); 232 (reported mood cycling was much worse, mood anxious); 235 (anxious); 236 (mood mildly anxious); 238 (reported medication side effects - caused

9

difficulty paying attention);  240 (mood anxious, irritable, reported poor concentration and focus); 242 (normal to euphoric mood); 249 (depressed, reported mood swings, medication side effects - made her "jittery," poor sleeping pattern); 253 (mood normal to irritable, reported continuing difficulty with her moods); 255 (mood "quite anxious"); 260 (mood mildly anxious), 274 (mood irritable); 277 (reported side effects of weight gain and headaches); 279 ("lots of social problems," mood depressed, anxious irritable, "under a lot of stressors"); 280 (mood "mildly hyper," affect labile); 281 (affect labile); 282 (mood elevated; affect labile); 315 (mood irritable, mildly hyperactive); 316 (mood euphoric, increased hyperactivity).  Dr. Al-Botros' records, which indicated that Plaintiff exhibited bipolar symptoms a great deal of time and that she occasionally exhibited no symptoms, did not justify the ALJ's rejection of Dr. Goodrich's functional assessment.  Additionally, through this period of time Plaintiff was taking several anti-psychotic and mood-stabilizing medications, and she reported experiencing serious side effects that could affect her functional abilities, none of which were expressly considered by the ALJ. (TR 220, 234, 237, 239, 241, 243, 244, 247, 250, 254, 256, 257, 258, 261, 262, 265, 266, 272, 276).

An ALJ "may not ignore evidence that does not support his decision, especially when that evidence is significantly probative." Briggs ex rel. Briggs v. Massanari, 248 F.3d 1235, 1239 (10th Cir. 2001)(quotation omitted); see also Clifton, 79 F.3d at 1010 ("[I]n addition to discussing the evidence supporting his decision, the ALJ also must discuss ... significantly probative evidence he rejects.").   If Dr. Goodrich's functional assessment is credited, the ALJ's RFC assessment, which contained no mental limitations whatsoever, and step four

finding that Plaintiff retained the ability to perform her previous job as an employment recruiter find no evidentiary support in the record.  There is consequently not substantial evidence in the record to support the Commissioner's decision that Plaintiff retains the capacity to perform this previous job, and the Commissioner's decision should be reversed and remanded for further administrative proceedings consistent with the findings herein.[1]

## RECOMMENDATION

In view of the foregoing findings, it is recommended that judgment enter REVERSING the decision of the Commissioner to deny Plaintiff's applications for benefits and REMANDING the matter to the Commissioner for further proceedings.  The parties are advised of their respective right to file an objection to this Report and Recommendation with the Clerk of this Court on or before  October 19th, 2009, in accordance with 28 U.S.C. §636 and LCvR 72.1.  The failure to timely object to this Report and Recommendation would waive appellate review of the recommended ruling. Moore v. United States, 950 F.2d 656 (10th Cir. 1991); cf. Marshall v. Chater, 75 F.3d 1421, 1426 (10th Cir. 1996)("Issues raised for the first time in objections to the magistrate judge's recommendation are deemed waived.").

This Report and Recommendation disposes of all issues referred to the undersigned Magistrate Judge in the captioned matter, and any pending motion not specifically addressed

---

[1]In view of the recommendation, it is not necessary to address the Plaintiff's remaining arguments.

herein is denied.

ENTERED this ____28th____ day of ____September, 2009.


GARY M. PURCELL
UNITED STATES MAGISTRATE JUDGE